WALBRIDGE ALDINGER COMPANY,
Midwest Building Supplies, Inc., and
Joseph Shelton, Plaintiffs,

v.

CITY OF DETROIT, Defendant.

Civil No. 07–11736.

United States District Court,
E.D. Michigan,
Southern Division.

July 5, 2007.

James D. Vandewyngearde, Pepper Hamilton, Detroit, MI, for Plaintiff.

James D. Noseda, Detroit City Law Department, Detroit, MI, for Defendant.

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

Plaintiffs, Walbridge Aldinger Company, Midwest Building Supplies, Inc. and Joseph Shelton (Plaintiffs) sued for injunctive relief after falling short in the bidding process to build Oakwood CSO Control Facility and Pump Station Project, Contract No. PC 755.[1] Defendant, City of Detroit, moves for summary judgment, alleging that Plaintiffs do not have standing to bring this matter before this Court and, alternatively, Plaintiffs would fail on the merits. As I agree that there is no standing to bring this claim, I GRANT summary judgment to the Defendant.[2]

## I. FACTUAL BACKGROUND

In January 2007, Defendant solicited competitive sealed bids for contracts to build the Oakwood CSO Control Facility and Pump Station Project. The bids were subject to Detroit's purchasing ordinance,

---

1. The project includes renovating and refurbishing existing facilities and the construction of a new storm and sanitary pump station to control storm waste water.

2. This case is before me because I have been overseeing the compliance of the Detroit Water and Sewerage Department with federal and state environmental laws through authority stemming from a series of consent judgments. This includes the issuing of contracts concerning the building and maintenance of DWSD facilities.

1984 Detroit Code § 18–501 *et seq.*, which states that the bid would be awarded to the lowest responsible bidder, and that Defendant reserved the right "to waive **any** nonconformance." (Def.Br., Ex. 1.) (emphasis added) The bid solicitation documents also included the following:

- a copy of Mayor Kwame Kilpatrick's Executive Order No.2003–4, which stated Detroit's policy of promoting Detroit–Based Businesses (DBB) and Detroit–Headquartered Businesses (DHB) by establishing a goal of 30% DBB and DHB participation in Detroit projects;

- a statement that "[i]n accordance with Executive Order No.2003–4 ... this contract [had] a goal of 30% of the total contract dollar amount to be subcontracted to ... [either] Detroit–Based Businesses [or] Detroit–Headquartered Businesses; and

- a requirement that bidders include with their bids completed DBB Subcontractor Forms, showing the identity of each DBB or DHB with whom the bidder intended to contract, its scope of work, the agreed subcontract price, and the signature of both the bidder and the identified subcontractors."

(Compl.¶¶ 13, 14.) The process therefore required bidders who were either a DBB or a DHB to either commit themselves to performing the work or to subcontract 30% of the work to specifically identified subcontractors.

A completed DBB Subcontractor Data Form must accompany the bid of each Contractor who is bidding on a DBB contract. Bids that do not include a completed DBB Subcontractor Form

shall be deemed non-responsive and shall be disqualified.[3]

(Compl. Ex. A at 6.)

Only two bids were received on PC–755: one submitted by L. D'Agostini & Sons, Inc/Lakeshore Engineering, Inc. Joint Venture (D'Agostini) in the amount of $154,507,025; the other by the Walbridge/Oakwood Joint Venture (Walbridge) in the amount of $159,931,000. After application of a 2% equalization credit for a Detroit-based joint venture from Table II of the Detroit Code § 18–5–2, the Walbridge JV equalized bid totaled $156,732,380. (Def't Br. Ex. 3.)

The bids were opened on or about March 29, 2007. D'Agostini was deemed the lower bid, both in terms of the actual bids proposed and after Detroit officials added a 2% equalization credit only to the Walbridge bid because D'Agostini's bid failed to provide a copy of the joint venture agreement. (*Id.*) D'Agostini also failed to complete its DBB Subcontractor Data Forms which would have revealed how it planned to meet the City's 30% DBB work goals. The flaws were deemed minor, and D'Agostini's bid was chosen.

Walbridge complained to Detroit in a letter dated March 30, 2007 that D'Agostini's bid should have been rejected as non-responsive, or alternatively, that D'Agostini should not be given an equalization credit for being a DBB or DHB. (Compl.Ex.D.) In a letter dated April 5, 2007, Detroit's purchasing director informed Walbridge that the D'Agostini bid was responsive and that the non-conformances in the bid were minor and would be waived by Detroit. (Compl.Ex.E.) Walbridge then submitted its bid protest on

**3.** According to Plaintiffs's brief, DWSD has changed this language in the bid solicitation documents it has used since the PC–755 contract bid. (Plaint. Br. at 4, fn. 1.) In the solicitation of bids for the Schoolcraft Pump-

ing Station Rehabilitation project, the language was modified to state: "Bids that do not include a completed DBB Subcontractor Data form may be deemed non-responsive...."

April 9, 2007, raising the same issues it argued in its March 30th bid inquiry letter. (Compl.Ex.F.) In an April 13, 2007 response, Detroit explained, as relevant, that:

(1) The lack of a complete DBB Subcontractor Data Form is a minor defect that is waivable without causing prejudice to Walbridge because all bidders including Walbridge were allowed to shop their bids among subcontractors.

(2) Generally a substantial deviation is one that affects the price, the quantity, or quality of the goods or services being supplied. Further a substantial deviation is one that affects price and gives one bidder an advantage not allowed to others. *Pascoe v. Barlum,* 247 Mich. 343, 225 N.W. 506 (1929).

(3) The missing information did not affect price or the amount of the bid, and was a matter of form and not substance.

(4) Walbridge was given a 2% joint venture equalization credit for being a DBB or DHB joint venture.

(Def't Br. Ex. 4.)

Detroit then required D'Agostini to "demonstrate responsibility" by providing 11 items, including a complete list of subcontractors, and the manufacturer or supplier of 154 items that were referenced in D'Agostini's bid proposal. (Def't Br. Ex. 5.) On April 19th, Plaintiffs filed a two count complaint for preliminary and permanent injunctive relief. At the May 1st hearing on a motion for a preliminary injunction, this Court denied relief because it did not appear that any of the non-conformances that were waived by Detroit affected the bid price or D'Agostini's ability to fulfill its contract. This Court now addresses Defendant's motion for summary judgment.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if proof of that fact would establish or refute one of the essential elements of a claim or defense and would affect the application of governing law to the rights and obligations of the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). The court must view the evidence and any reasonable inferences drawn therefrom in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For a claim to survive summary judgment, the nonmovant must offer more than a mere scintilla of evidence as to the material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant's burden is satisfied where there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. Standing to File this Lawsuit.

#### 1. *Disappointed Bidder Doctrine*

■ Under Michigan law, a disappointed bidder is generally *not* allowed to seek relief when a municipal organization rejects their bid. *Talbot Pav. Co. v. Detroit,* 109 Mich. 657, 67 N.W. 979, 980–81 (1896); *Detroit v. Wayne Circuit Judges,* 128 Mich. 438, 87 N.W. 376, 377 (1901).

#### 2. *Plaintiffs do not have standing as rate payers to DWSD.*

■ Plaintiffs do not have standing to bring this matter before this Court. Plaintiffs argue that they are Detroit taxpayers and DWSD fee-paying customers

and as such have standing to legally challenge the DWSD award in this matter, regardless of whether they have bid on the PC–755 contract or not. I previously wrote that retail water customers of DWSD or rate payers do not have standing to join in disputes involving the awarding of public contracts. Specifically in the "Opinion and Order Approving Contracts and Ordering Remedy for Wholesale Customers as to Contract WS–623" I ruled:

> Wayne County has filed materials challenging my ruling that they lack standing to object, because while it is not a wholesale water customer, it is a retail water customer of DWSD. I note this would also be true of nearly every home and business in the entire region, so that allowing Wayne County standing to object on this basis would also require me to allow any individual in the region to become a party to this case.

> Allowing any retail ratepayer to object to any contract would be creating "ratepayer standing"—a concept analogous to taxpayer standing, which the courts have consistently limited to unusual circumstances not present here. *See e.g., Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923) ("interest in the moneys of the Treasury . . . is shared with millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity."), quoted for this proposition by *Daimler-Chrysler Corp. v. Cuno,* —— U.S. ——, —— – ——, 126 S.Ct. 1854, 1856–57, 164 L.Ed.2d 589 (2006).

*United States v. Michigan,* Case 77–71100, 2006 WL 1374471 at *2 (E.D.Mich. May 18, 2006) (Feikens, J.).

Although the facts are distinguishable, the principle still applies that as retail rate payers Plaintiffs are not allowed to challenge this contract barring unusual circumstances that are not present here. As DWSD retail ratepayers, Plaintiffs are no different than nearly every home or business in the entire region. Allowing Plaintiffs to have standing in this matter would essentially permit any individual in the region to become a party to any case regarding a contract awarded by DWSD, and would have the further consequence of allowing any disappointed bidder to circumvent the disappointed bidder doctrine merely because they also are retail customers of the DWSD.

## III. CONCLUSION

Plaintiffs fail to demonstrate that they have standing to bring this complaint before this Court. Therefore, I GRANT summary judgment to the Defendant.

**IT IS SO ORDERED.**